UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHIRLEY IRBY,                          )   NO. CV 06-02225 SS
                                       )
                Plaintiff,             )
                                       )
        v.                             )   **MEMORANDUM DECISION AND ORDER**
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of the Social             )
Security Administration,               )
                                       )
                Defendant.             )
─────────────────────────────────────)

**INTRODUCTION**

Plaintiff Shirley Irby ("Plaintiff") filed this action on April 12, 2006, seeking to overturn the decision of the Commissioner of the Social Security Administration[1] (hereinafter the "Commissioner" or the "Agency") denying her application for Disability Insurance benefits. Alternatively, she asks for a

_____

[1] Michael J. Astrue has become the Commissioner of Social Security Administration. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he is substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. F.R.C.P. 25(d)(1). The instant action survives "notwithstanding any change in the person occupying the office of Commissioner of Social Security[.]" 42 U.S.C. § 405(g).

1  remand.   The parties have consented, pursuant to 28 U.S.C. §
2  636(c), to the jurisdiction of the undersigned United States
3  Magistrate Judge.   Pursuant to the Court's Case Management Order,
4  the parties filed a joint stipulation ("Jt. Stip.") on February 5,
5  2007.   For the reasons stated below, the decision of the
6  Commissioner is AFFIRMED.

7
8                        **PROCEDURAL HISTORY**
9

10      On February 21, 2003, Plaintiff filed an application for
11  Disability Insurance Benefits ("DIB").   (AR 48-50).   Plaintiff
12  alleged that she became disabled on October 19, 1999 due to "severe
13  back problems."  (AR 48, 69).   Plaintiff later amended her alleged
14  onset date to coincide with her February 21, 2003 application date.
15  (AR 14, 260).

16

17      After Plaintiff's claims were denied initially and on
18  reconsideration, she requested a hearing before an administrative
19  law judge ("ALJ").   (AR 24-27, 29-33, 36).   On March 30, 2005, ALJ
20  Zane A. Lang held an administrative hearing.   (AR 42, 220).
21  Plaintiff appeared with counsel and testified.   (AR 224-54).   The
22  ALJ also heard testimony from vocational expert ("VE") Heidi Paul.
23  (AR 255-58, 260).   On November 2, 2005, the ALJ issued a decision
24  denying benefits.   (AR 14-20).   Plaintiff sought review before the
25  Appeals Council, which affirmed the decision on February 15, 2006,
26  making ALJ Lang's decision the final decision of the Agency.   (AR
27  5-7).   Plaintiff filed the instant action on April 12, 2006.

28

                                2

1

**FACTUAL BACKGROUND**

2

3      Plaintiff was born on September 21, 1940, and was sixty-four

4  years old at the time of the hearing.[2]  (AR 48, 233).  Plaintiff

5  earned a bachelor's degree and also completed some work toward a

6  master's degree.  (AR 75, 234).  Plaintiff's prior work history

7  included employment as a preschool teacher, a home care worker, and

8  a clerk for her husband's construction business.  (AR 70, 224-31).

9

10 **A.  Relevant Medical History**

11

12      In her application for benefits, Plaintiff claimed that she

13 was disabled due to "severe back problems."  (AR 69).  Plaintiff

14 also suffered from hypertension and hypothyroidism.  (AR 167).  She

15 had a history of breast cancer with a mastectomy in 1983 and colon

16 cancer with a colon resection in 1995.  (AR 73, 167).  Plaintiff

17 obtained treatment for her lower back pain and other conditions

18 from her family doctor, Dr. Oscar Moore, Jr.  (AR 71, 135-42).

19 Plaintiff also saw Dr. Michael Hamilton on at least one occasion

20 for a case of bronchitis.  (AR 205).  Dr. Hamilton completed a

21 "certificate" opining that Plaintiff was permanently disabled, and

22 enumerating diagnoses of chronic back pain, anxiety, hypertension,

23 hypothyroidism, history of radical mastectomy, and history of

24 sigmoid colon cancer.  (AR 202).

25

26      [2]  While the ALJ stated that Plaintiff was born on September
   18, 1940, which date he may have obtained from certain documents,
27 most documents in the record, including Plaintiff's application,
   indicate that her birth date was September 21, 1940.  (AR 48, 63,
28 78).

3

Plaintiff also sought psychological care from Dr. Marie Moore. Plaintiff complained of depression and anxiety she attributed to her health problems and the murder of her son.  (AR 192-93, 197). Plaintiff stated that both Dr. Marie Moore and Dr. Oscar Moore prescribed Xanax.[3]  (AR 241-42).

**B.   Relevant State Agency Physician Evaluations**

A State Agency doctor completed a Physical Residual Functional Capacity Assessment on June 30, 2003.  (AR 117-24).  That doctor[4] opined that Plaintiff could lift or carry ten pounds occasionally or less than ten pounds frequently, stand or walk for two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday.  (AR 118).  The State Agency doctor also found that Plaintiff should be limited to stooping, kneeling, crouching, crawling, or climbing ramps or stairs only occasionally, never climbing ladders, ropes, or scaffolds, and never being exposed to hazardous machinery or heights.  (AR 119, 121).  The doctor stated that there were no significant differences between the doctor's conclusions and those of Plaintiff's treating doctors.  (AR 123).

On February 18, 2004, Plaintiff was examined by consulting physician Dr. Robert Hunt.  (AR 147-54).  Plaintiff complained of

---

[3]   Xanax, also known as Alprazolam, is used to treat anxiety and panic disorders. Drugs and Treatments (June 25, 2007)   < http://www.webmd.com/drugs/search>.

[4]   The State Agency doctor is not identified by name in the record, and his or her signature on the form is illegible.

low back pain and muscle spasms, with pain and numbness radiating into her legs and feet.  (AR 149-50).   Dr. Hunt observed that Plaintiff's gait was "slow, deliberate, and antalgic," and that she complained of tenderness when walking on her heels. (AR 151, 152). He found no palpable muscle spasm, but noted tenderness over the lumbar spine.  (AR 152).   Dr. Hunt administered several tests including sitting and supine leg raising, Fajersztajn's test, FABERE and reverse FABERE tests, Tinel's sign over the femoral and peroneal nerves and the posterior tibia, and Apley's grind test. (AR 152-53).  Dr. Hunt assessed Plaintiff as suffering lumbosacral strain with secondary radiculopathy to the legs.  (AR 154).

Dr. Hunt completed a form assessing Plaintiff's functional limitations.  (AR 155).  He found that Plaintiff should be limited to sitting, standing, or walking for one half hour at a time or one and one half hours in an eight-hour workday.  (Id.).   She should not lift or carry more than five pounds on an occasional basis or push or pull controls with her arms or legs.  (Id.).   She should not engage in fine manipulation, bending and reaching should be only occasional and she should never squat, crawl, or climb. (Id.).   She should limit herself to moderate exposure to dust, fumes, and gases and should avoid activities involving unprotected heights, moving machinery, marked changes in temperature or humidity, or driving.  (Id.).

In June 2005, after Plaintiff's hearing before the ALJ, consultative physician Dr. Celeste Emont evaluated Plaintiff.  (AR 206-10).   Dr. Emont noted that Plaintiff had been prescribed

1  Methocarbamol, Naproxen, Vicodin[5], and Xanax, among other
2  medications to control her hypothyroidism, hypertension, and other
3  conditions. (AR 206-07). She observed that Plaintiff had a normal
4  gait and walked in without any assistive device. (AR 207, 209).
5  Dr. Emont concluded that Plaintiff suffered from left lumbar
6  muscular spasm, depression, and anxiety. (AR 209). With respect
7  to Plaintiff's back, she found mild tenderness in the left lumbar
8  area, slow and deliberate heel toe walk without back pain, ninety
9  degrees back flexion without pain, and thirty-five degrees lateral
10 bending. (Id.). Dr. Emont found no neurological deficits. (Id.).
11
12     Dr. Emont completed a form assessing Plaintiff's functional
13 limitations. (AR 212-15). She limited Plaintiff to lifting or
14 carrying twenty-five pounds occasionally and ten pounds frequently,
15 standing or walking about six hours in an eight-hour workday,
16 sitting with the need to alternate sitting and standing, limited
17 pushing and pulling with lower extremities, never climbing or
18 balancing, and occasionally kneeling, crouching, crawling, or
19 stooping. (AR 212-15).
20
21     Following Dr. Emont's examination and assessment, a
22 radiological study was made of Plaintiff's lumbosacral spine. (AR
23 211). The radiologist found moderate discogenic disease at L4-L5
24 with sclerosis and narrowing of the lower apophyseal and S-I
25 joints, as well as splinting indicative of muscle spasm. (Id.).
26

27       [5]   Methocarbamol is a muscle relaxant. Naproxen is used to
   relieve pain and inflammation. Vicodin is a pain reliever. Drugs
28 and Treatments (June 25, 2007)< http://www.webmd.com/drugs/search>.

C.    **Plaintiff's Testimony**

Upon questioning by the ALJ, Plaintiff testified about her work history.    Her longest employment was as a pre-school and primary school teacher.    (AR 230-33).    She explained that she stopped teaching in 1999 because of pain in her lower back, shoulders, arms, and legs.    (AR 242-43).    She testified that she qualified for retirement based on disability.    (AR 252-53). However, she earlier testified that her retirement from Los Angeles Unified Schools was based upon "years of service."    (AR 242)(See also AR 237 (retirement was "regular retirement")).

Plaintiff also described her most recent work as a clerk for her husband's construction business.    (AR 224-25).    She explained that her duties included answering the phone, taking messages, and doing some filing.    (Id.).    She reported that she did it "to help him out" and only for a few months.    (AR 226).    She testified that she worked "maybe one week" in 1999 and "two to three months" in 2000 and 2001.    She also worked "two to three months" for her husband in 2002, just prior to her alleged onset date in 2003.    (AR 227-28).    Plaintiff further reported that she had previously provided home care to her mother for a few months a year from 1992 until 1995.    (AR 225, 228-30).

Plaintiff testified that she sometimes did "light chores" around the house, including washing dishes, dusting, making the bed, and laundry with her husband's help.    (AR 234-35).    She testified that she did not cook, vacuum, sweep, mop, or take out

7

the trash.  (_Id._).  Plaintiff noted that she drove very little.
(_Id._).  She reported that she enjoyed reading and writing.  (AR
237).  Plaintiff also mentioned that she watched television and
"prayed a lot."  (_Id._).  She testified that she would visit with
family that came to visit and occasionally talk on the phone.  (AR
238-39).  Plaintiff attends church "maybe once a month."  (AR 238).

Plaintiff testified about her medical history, including
breast and colon cancer.  (AR 236).  She reported that her
medications had included Vicodin, thyroid medication, Xanax,
Zantac, and Ambien.  (AR 239-40).  Plaintiff complained that she
was unable to work because of pain in her back, shoulders, and
arms.  (AR 246).  She testified that pain medication provided some
relief, but that it made her drowsy, due to which she would sleep
two to three hours during the day.  (AR 247-48).  Plaintiff
estimated that she could walk about a half a block and that she
could stand for twenty-five to thirty minutes while washing dishes.
(AR 248).  She explained that she needed a cane for walking and
standing.  (AR 248-49).

Plaintiff testified that she had seen a psychologist from
August through December 2004.  (AR 240-41).  She decided to seek
psychological care to deal with the frustration caused by cancer
and deteriorating health, and to deal with the then-recent death of
her son.  (AR 243-44, 245-46).  Plaintiff reported that she stopped
seeing the psychologist because she wanted to try to "get [her]
life together on [her] own."  (AR 241).  She complained that she

was still having psychological problems, and that she had become
forgetful.  (AR 249-50).

**D.  <u>VE's Testimony</u>**

VE Heidi Paul explained that Plaintiff's prior work as a
teacher would be classified as "Attendant, Children's Institution,"
and was categorized as SVP three and at a medium exertional level.
(AR 256).  She testified that the work Plaintiff performed for her
husband would be classified as "Clerical Worker," which was
performed at a sedentary level, and was categorized as SVP three.
(AR 257).  She classified Plaintiff's work as a "Home Health Aide"
as SVP three and at a light exertional level.  (<u>Id.</u>).

The ALJ presented the following hypothetical to VE Paul:

[A]ssume a hypothetical individual of the [Plaintiff's]
age, education and work experience, who could lift 10
pounds occasionally, less than 10 pounds frequently,
stand and/or walk 2 hours out of an 8 hour day, sit 6
hours out of an 8 hour day, needs a hand held device,
assistive device for walking long distances, no climbing
ladders, ropes and scaffolds –

. . . .

No climbing ladders, ropes and scaffolds, no balancing,
occasional climbing ramps and stairs, occasional
stooping, kneeling, crouching, and, let's see, and let's

1    say  occasional  crawling.    Could  this  hypothetical

2    individual perform any of the claimant's past work?

3

4  (AR 257).   The VE reported that Plaintiff could perform her past

5  work as a clerical worker as she had previously performed it.  (AR

6  258).   The ALJ then modified the hypothetical, asking the VE to

7  assume a hypothetical individual of the Plaintiff's age, education,

8  and work experience:

9

10    that because of medication has to nap two to three hours

11    during  the  work  day,  and  has  chronic  pain  that – and

12    difficulties concentrating that prevents her from working

13    five days a week, eight hours a day, or at the level of

14    substantial gainful activity . . . .

15

16  (AR 260).   VE Paul testified that such an individual could not

17  perform Plaintiff's past work or any other work.

18

19            **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

20

21    To   qualify   for   disability   benefits,   a   claimant   must

22  demonstrate  a medically determinable physical or mental impairment

23  that prevents him from engaging in substantial gainful activity[6]

24  and  that  is  expected  to   result  in  death  or  to  last  for  a

25  continuous period of at least twelve months.  <u>Reddick v. Chater</u>,

26  ────────────────────

27        [6]Substantial gainful activity means work that involves doing
   significant and productive physical or mental duties and is done
28  for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)   Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5)   Is the claimant able to do any other work? If not, the

11

1      claimant is found disabled.  If so, the claimant is
2      found not disabled.

3

4  Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262
5  F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§
6  404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

7

8      The claimant has the burden of proof at steps one through
9  four, and the Commissioner has the burden of proof at step five.
10 Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant
11 meets his burden of establishing an inability to perform past work,
12 the Commissioner must show that the claimant can perform some other
13 work that exists in "significant numbers" in the national economy,
14 taking into account the claimant's residual functional capacity
15 ("RFC"),[7] age, education, and work experience.  Tackett, 180 F.3d
16 at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§
17 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the
18 testimony of a vocational expert or by reference to the Medical-
19 Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,
20 Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel,
21 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both
22 exertional (strength-related) and nonexertional limitations, the
23 Grids are inapplicable and the ALJ must take the testimony of a

24

25

26      [7]   Residual functional capacity is "what [one] can still do
27 despite [his] limitations" and represents an "assessment based upon
   all of the relevant evidence."   20 C.F.R. §§ 404.1545(a),
28 416.945(a).

                                  12

vocational expert.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**THE ALJ'S DECISION**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since her alleged February 21, 2003 onset date.  (AR 19).  At step two, the ALJ found that Plaintiff had no severe mental impairment, but did have hypertension, hypothyroidism, obesity, a history of colon cancer in 1995, and low back pain.  (AR 17, 20).  At step three, the ALJ found that Plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of any impairment listed at  20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 20).

At step four, the ALJ adopted a RFC for Plaintiff limiting her only by inability to lift more than ten pounds, stand or walk longer than two hours in an eight-hour work day, sit longer than six hours in an eight-hour work day, do more than occasional stooping, kneeling, crouching, or crawling, climb ladders, ropes, and scaffolds, do more than occasional climbing of ramps or stairs, balance, and by a need to use an assistive device for walking long distances.  (AR 15-16, 20).  Based upon this assessment, the ALJ concluded that Plaintiff was able to perform her past relevant work as a clerk.  (AR 16, 20).  Accordingly, the ALJ concluded that Plaintiff was not under a "disability" within the meaning of the Social Security act at any time prior to her date last insured. (AR 20).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

\\
\\
\\

14

**DISCUSSION**

Plaintiff complains that the ALJ's decision should be overturned for several reasons. Petitioner argues the ALJ erred in finding that Plaintiff's past work as a clerk constituted substantial gainful activity, that the ALJ failed to properly consider the opinions of various physicians and Plaintiff's own testimony, and that the ALJ's assessment of her residual functional capacity was not supported by substantial evidence. (Jt. Stip. at 3).

**A.    The ALJ Properly Determined That Plaintiff's Past Work Was "Relevant" and Substantial Gainful Activity**

Plaintiff contends that the ALJ erred by finding that her previous employment as a clerk for her husband's construction business constituted past relevant work and "substantial gainful activity." (Jt. Stip. at 3). Specifically, Plaintiff complains that it was not substantial gainful activity ("SGA") because it was performed under special conditions and because she was only employed because of a family relationship. (Jt. Stip. at 4). The Court finds that Plaintiff's claim lacks merit.

For past work to be "relevant," it must have been done within the last fifteen years, lasted long enough for the claimant to learn to do it, and be substantial gainful activity. 20 C.F.R. § 404.1560(b)(1); SSR 82-62, 1982 WL 31386, *2 (November 30, 1981). The duration requirement is met if the length of the employment was

15

sufficient enough "for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation." SSR 82-62, 1982 WL 31386, *2. The length of time this would take depends on the nature and complexity of the work. Id.

"A job qualifies as past relevant work only if it involved substantial gainful activity." Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001). The Regulations set forth guidelines for determining whether past work constituted substantial gainful activity. If a claimant's income exceeds a certain monthly average, the past work is presumptively SGA. 20 C.F.R. § 404.1574(a)(1); Corrao v. Shalala, 20 F.3d 943, 948 (9th Cir. 1994).

This presumption may be rebutted, however, and it does not "'relieve an ALJ of the duty to develop the record fully and fairly.'" Corrao, 20 F.3d at 948 (quoting Dotson v. Shalala, 1 F.3d 571, 576 (7th Cir. 1993)). The presumption may be rebutted if the claimant's wages were "subsidized" and did not reflect the true value of the work performed. 20 C.F.R. § 404.1574(a)(2). In such circumstances, the ALJ considers only the amount that was directly related to the claimant's productivity. 20 C.F.R. § 404.1574(a)(2). The presumption may also be rebutted by other factors, including "the responsibilities and skills required to perform the work, the amount of time the individual spends working, the quality of the individual's work, [and] special working conditions. . . ." Corrao, 20 F.3d at 948.

16

The ALJ found that Plaintiff's prior work constituted SGA based upon her income and the fact that Plaintiff held the job long enough to learn it.  (AR 15).   The ALJ noted that Plaintiff's income working for her husband's business was high enough to create the presumption of SGA.  (AR 15).   The ALJ summarized the following work and income history based upon Plaintiff's work as a clerk for her husband:

* one week in 1999 and had $3326.00 reported earnings in 1999
* two to three months in 2000 and had $3326.00 reported earnings for 2000
* two to three months in 2001 and had $3326.00 reported earnings for 2001
* two to three months in 2002 and had $1663 reported earnings for 2002.

(AR 15, AR 226-228)(See Exhibit 2D, p. 6).   The regulations provide a presumption of substantial gainful activity if the claimant earned more than $700 a month after December 2000.   See 20 C.F.R. 416.974(b)(2) & 20 C.F.R. 416.975(a)(2)(c).   Plaintiff's earnings, therefore, satisfied the presumption.   In addition, she held the job long enough to learn it and performed it within the last fifteen years.   As such, the ALJ found that this work was substantial gainful activity and constituted past relevant work.

Plaintiff contends that her wages were "heavily subsidized" and that she worked under special conditions because her husband was her employer.  (Jt. Stip. at 3-5).   Plaintiff further argues,

17

without evidentiary support, that she would not have been able to perform the job but for special circumstances.  The only relevant evidence in the record regarding Plaintiff's work were her earnings and her testimony that she worked approximately a week in 1999, and two to three months in each of 2000, 2001, and 2002.  (AR 227-28).

Plaintiff asserts that, at most, her work for her husband's company constitutes an unsuccessful work attempt. (Jt. Stip. at 3-5).  A finding that work of three months or less constituted an unsuccessful work attempt, and therefore was not substantial gainful activity, is dependent upon employment being cut short due to the claimant's disability or the removal of special circumstances that allowed the claimant to work notwithstanding her disability.  20 C.F.R. § 404.1574(c)(1)-(3); SSR 05-02, 2005 WL 568616 at *2 (February 28, 2005).  Significantly, Plaintiff does not even argue, much less present evidence to demonstrate that she stopped working for her husband due to her condition.  In fact, Plaintiff's testimony implies that she worked for her husband as needed, "just to help him out," not that she was unable to maintain sustained work due to her impairments.  (AR 226).  As such, substantial evidence in the record supports the ALJ's finding that Plaintiff's work as a clerk was substantial gainful activity.

In sum, Plaintiff's work as a clerk was performed within the past fifteen years, lasted long enough for Plaintiff to learn the work, and constituted substantial gainful activity.  Accordingly, the ALJ's finding that Plaintiff's work as a clerk was "past

18

relevant work" was not legally erroneous and was supported by substantial evidence in the record.

**B.   The ALJ Properly Considered The Opinions Of Treating, Examining, And Non-Examining Physicians**

Plaintiff complains that the ALJ improperly rejected the opinions of treating physicians Dr. Oscar Moore, Jr. and Dr. Michael Hamilton and of examining physician Dr. Robert Hunt. (Jt. Stip. at 7).  Plaintiff also asserts that the ALJ gave too much weight to the opinions of the non-examining State Agency physician and to examining physician Dr. Emont's opinion.   The Court disagrees.

Although the treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion by providing "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  Like the opinion of

1   a treating doctor, the opinion of an examining doctor, even if
2   contradicted by another doctor, can only be rejected for specific
3   and legitimate reasons that are supported by substantial evidence
4   in the record.  Id. at 830-31.

6       In addition, the ALJ need not accept the opinion of any
7   physician, including a treating physician, if that opinion is
8   brief, conclusory, and inadequately supported by clinical findings.
9   See Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  Where
10  the opinion of the claimant's treating physician is contradicted,
11  and the opinion of a nontreating source is based on independent
12  clinical findings that differ from those of the treating physician,
13  the opinion of the nontreating source may itself be substantial
14  evidence.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).
15  "It is then solely the province of the ALJ to resolve the
16  conflict."  Id.  When presented with conflicting medical opinions,
17  the ALJ must determine credibility and resolve the conflict.
18  Batson v. Commissioner of Social Security Administration, 359 F.3d
19  1190, 1195 (9th Cir. 2004) (citing Matney).  Greater weight must
20  be given to the opinion of treating physicians, and in the case of
21  a conflict "the ALJ must give specific, legitimate reasons for
22  disregarding the opinion of the treating physician."

24      Here, the ALJ concluded that the opinions of treating
25  physicians Dr. Oscar Moore, Jr. and Dr. Michael Hamilton, and
26  consultative examiner Dr. Robert Hunt were "completely contradicted
27  by the opinion of a consultative examiner and a State Agency
28  doctor."  (AR at 16).  The ALJ also found that all three treating

20

1   doctor opinions were "not supported by the overall record."  (AR

2   16).

3

4       **1.    The ALJ Properly Rejected The Opinions Of Dr. Hamilton,**

5            **Dr. Moore, and Dr. Hunt**

6

7       While Plaintiff identifies Dr. Michael Hamilton as a treating

8   physician, the only documents in the record relating to his care

9   are  a  cursory  disability  form  stating  that  Plaintiff  was

10  permanently disabled and that she was diagnosed with "chronic back

11  pain," and brief examination notes that appear to relate to a case

12  of bronchitis.  (AR 202, 205).  Plaintiff herself admits that she

13  only had two visits with Dr. Hamilton and that he was "hardly

14  qualified [] as an expert on [P]laintiff's physical health."  (Jt.

15  Stip. at 9).

16

17      Given  the  complete  absence  of  any  specific  findings  or

18  explanation of his conclusion that Plaintiff was "disabled," the

19  Court finds no error in the ALJ's rejection of Dr. Hamilton's bald

20  conclusion.  (AR 202).  See Magallanes v. Bowen, 881 F.2d 747, 751

21  (9th Cir. 1989) (finding that the ALJ need not consider conclusory

22  opinions); see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir.

23  1996) (holding that the ALJ  properly rejected doctor's opinion

24  because they were check-off reports that did not contain any

25  explanation of the bases of their conclusions).  A doctor's

26  conclusory statement that an individual is disabled is not binding

27  upon the agency.  20 C.F.R. § 404.1527(e)(1) ("A statement by a

28

21

medical source that you are 'disabled' or 'unable to work' does not mean that [the Agency] will determine that you are disabled.").

Dr. Moore's and Dr. Hunt's opinions were contradicted by the opinion of Dr. Emont, an examining physician, who based her report on independent findings including a physical examination and musculoskeletal assessment of Plaintiff. (See AR 206-09). Dr. Moore opined that Plaintiff was permanently disabled. (AR 142). Dr. Hunt noted that Plaintiff would be unable to perform even sedentary work. (AR 155). Specifically, Dr. Hunt found that Plaintiff could only sit, stand, or walk for one thirty minutes at a time and for one and one half hours a day total. (Id.).

Dr. Emont disagreed. She found that Plaintiff was not in distress and that she walked without assistance. (AR 207). Dr. Emont reported that Plaintiff was only limited her by her inability to lift and carry more than twenty-five pounds on an occasional basis and ten pounds on a frequent basis, by her inability to stand/walk for more than six hours in an eight-hour day, by her need to alternate sitting and standing to relieve pain and discomfort, by her limited ability to push or pull with her lower extremities, by her inability to climb and balance and to only occasionally kneel, crouch, crawl or stoop. (AR 212-13). As such, Dr. Emont's opinion may itself be substantial evidence supporting the ALJ's decision to reject the opinions of Dr. Moore and Dr. Hunt. See Andrews, 53 F.3d at 1041.

1    Moreover, the ALJ gave specific and legitimate reasons for
2 rejecting the opinions of Dr. Moore and Dr. Hunt.  He found that
3 their opinions were not supported by the overall record.
4 Specifically, the ALJ noted that there was no evidence of
5 functional limitations due to Plaintiff's hypertension and
6 hypothyroidism.  (AR 16).  Based upon the medical evidence, both
7 conditions were "asymptomatic" and controlled with medication.

8

9    The ALJ observed that Plaintiff has had no recurrence of her
10 breast and colon cancer.  (Id.).  The medical evidence shows that
11 she was treated for breast cancer in 1984 and for colon cancer in
12 1995, with no recurrence and no limitations stemming from these
13 illnesses.  (AR 16).

14

15    He described Plaintiff's treatment for low back pain as
16 "sporadic" and "conservative."[8]   (Id.); see also Johnson v.
17 Shalala, 60 F.3d 1428, 1432 (finding that conservative treatment
18 suggests lower level of pain and functional limitation).  The ALJ
19 also determined that the evidence did not show that Plaintiff had
20 persistent abnormalities in gait or significant neurological
21 deficits.

22

23    He further observed that when Plaintiff underwent a
24 consultative orthopedic examination in 2005, she was reported to be

25

26    [8] The ALJ outlined that Petitioner had "gaps" in medical
   treatment from April 1, 2003 through September 14, 2003 (over five
27 months), from March 23, 2004 through January 28, 2005 (over ten
   months), and from March 30, 2005 through the date of the decision
28 (over six months).  (AR 17).

"in no acute distress." She walked into the examining room without any assistance, although she did have spasm and mild tenderness in her back. An x-ray revealed moderate discogenic disease at L4-L5. However, the straight-leg raising test was negative and Plaintiff demonstrated normal motion in all of her extremities. Her motor strength and sensation were intact. (AR 16-17).

Relying on both her medical history of sporadic treatment and the examination of the consultative doctor, the ALJ properly resolved the conflict between the treating doctor's opinion and the consultative doctor's opinion. Substantial evidence in the record supports the ALJ's rejection of the treating doctor's opinion.

In sum, the ALJ gave specific and legitimate reasons for rejecting the opinions of Dr. Hunt and Dr. Moore. Their opinions were contradicted by Dr. Emont, an examining consultative physician, who based her report on independent medical findings. Also, the ALJ correctly rejected Dr. Hamilton's conclusory assessment of Plaintiff's limitations. As such, there is substantial evidence in the record to support the ALJ's rejection of the opinions of Dr. Moore, Dr. Hunt, and Dr. Hamilton.

### 2. The ALJ Appropriately Considered The Opinions Of Dr. Emont And The State Agency Doctor

As discussed above, Dr. Emont's report was based on independent medical findings. Specifically, Dr. Emont took a medical history from Plaintiff. (AR 206-17). She also conducted

1  a physical examination including exams of Plaintiff's speech,
2  hearing, neck, skin, chest, eyes, and mouth.  (AR 207-08).  Dr.
3  Emont also performed various musculoskeletal assessments including
4  an assessment of Plaintiff's handgrip, shoulder abduction, elbow
5  flexion, wrist dorsi flexion, wrist palmer flexion, knee flexion,
6  ankle dorsi flexion, and ankle planter flexion.  (AR 208).  She
7  examined Plaintiff's back and found mild tenderness and muscle
8  spasm at the left lumbar area, that heel toe was slow and
9  deliberate, that Plaintiff could walk on heels and toes without
10 pain, that lateral bending was thirty-five degrees bilaterally, and
11 that back flexion was ninety degrees from an upright position.  (AR
12 209). As Dr. Emont's opinion contradicted the opinions of Dr. Hunt
13 and Dr. Moore and was based on independent medical findings, Dr.
14 Emont's opinion may itself be substantial evidence supporting the
15 ALJ's determinations.  See Andrews, 53 F.3d at 1041.  The ALJ,
16 therefore, did not err by rejecting the opinions of Dr. Moore and
17 Dr. Hunt in favor of Dr. Emont's opinion.

18

19      Further, the ALJ did not err by crediting the opinion of the
20 State Agency doctor. Nonexamining physician's opinions "with
21 nothing more" cannot constitute substantial evidence.  Andrews, 53
22 F.3d at 1042.  However, this does not mean that the opinions of
23 nonexamining sources and medical advisors are entitled to "little"
24 or no weight.  Id. at 1041.  Reports of a nonexamining advisor
25 "need not be discounted and may serve as substantial evidence when
26 they are supported by other evidence in the record and are
27 consistent with it."  Id.  Here, the State Agency Doctor's opinion
28 is consistent with the opinion of Dr. Emont.  As such, the ALJ did

not commit error by crediting the opinion of the State Agency doctor.

Plaintiff argues that the ALJ inexplicably adopted the more restrictive RFC findings of the State Agency doctor instead of Dr. Emont's findings. (Jt. Stip at 13). However, the ALJ specifically notes that he was "[g]iving the [Plaintiff] the benefit of the doubt" by adopting the more restrictive RFC. (AR 15). Accordingly, the ALJ did not "reject" Dr. Emont's findings but merely used the more restrictive RFC findings from the State Agency doctor to demonstrate that, even considering the more restrictive RFC, Plaintiff was not disabled.

In sum, the ALJ did not err by crediting the opinions of Dr. Emont or the State Agency doctor.  As such, Plaintiff is not entitled to relief on this claim.

**C.**   **The ALJ Properly Summarized And Weighed Plaintiff's Subjective Complaints Testimony**

Plaintiff contends that the ALJ failed to properly consider her testimony regarding her subjective symptoms and medication side effects. (Jt. Stip. at 14-15).  The Court disagrees.

In assessing the credibility of a claimant's subjective complaints testimony, an ALJ must first determine whether the claimant produced medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain.

Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (citing Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986)). Objective medical evidence is required to establish the underlying impairment, but not the severity of the pain. Id.

The ALJ must then assess the "credibility of the claimant's testimony regarding the severity of symptoms." Smolen, 80 F.3d at 1281. An ALJ "cannot be required to believe every allegation of disabling pain." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1994) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). However, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain, if the claimant has produced some objective medical evidence of an underlying impairment. Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001).

If the ALJ finds the claimant's pain testimony not to be credible, the ALJ "must specifically make findings that support this conclusion," and the findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Id. If there is no affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the symptoms. Id.

Despite finding that Plaintiff had conditions that could produce pain and symptoms, the ALJ found Plaintiff's claims of excess pain and functional limitations "not fully credible." (AR 18-19). The reasons cited by the ALJ for discrediting Plaintiff were: (1) that Plaintiff's reported activities were inconsistent with her claim of disabling limitations (AR 18); (2) that Plaintiff had been "conservatively" treated for her condition, and that she did not have a "regular prescription" for narcotic pain medication (AR at 19); and (3) that Plaintiff did not seek continuous treatment. (AR 19). Each of these factors provide a legitimate basis for discounting Plaintiff's subjective pain complaints and constitute clear and convincing reasons for finding Plaintiff "not fully credible."

The ALJ observed that Plaintiff makes her bed, shops, and does laundry. (AR 18). This is consistent with Plaintiff's testimony that she "spreads [her bed] up sometimes," that she does laundry with her husband's help, and that she goes food shopping "maybe once a month with [her] husband." (AR 235). The ALJ also stated that Plaintiff "gets together with family members." (AR 18). Moreover, Plaintiff's other activities identified included watching TV, reading, writing, and talking on the telephone. (Id.). These observations support the ALJ's finding that participation in these activities showed a that Plaintiff had the ability to perform work activities within the parameters of the ALJ's functional assessment.

The ALJ also cited "conservative treatment" as a basis for rejecting Plaintiff's testimony.  (AR 16, 19).  Conservative treatment may properly be considered in the credibility analysis because it suggests "a lower level of both pain and functional limitation."  Johnson, 60 F.3d at 1433.

The ALJ also noted "gaps" in Plaintiff's medical treatment that he stated reflected a "failure to seek continuous treatment," and therefore caused the ALJ "to doubt [Plaintiff's] complaints." (AR 19).  A failure to seek treatment is a factor for the ALJ to consider in his credibility analysis.  See Flaten, 44 F.3d at 1464 (holding, where claimant had sought treatment for back pain on only two isolated occasions, that "the ALJ was entitled to draw an inference" from the lack of medical care).

The Court also disagrees with Plaintiff's contention that the ALJ failed to properly consider the side effects of her medications.  In her disability report, Plaintiff noted several side effects from medications she was taking.  (AR 74).  At the hearing, the ALJ heard testimony from the Plaintiff that Vicodin, a narcotic pain medication, makes her sleepy, and that she takes daytime naps of two to three hours.  (AR 247-48).  As the ALJ pointed out, there was no medical evidence in the record regarding any medication side effects.  (AR 19).  The absence of any mention of side effects in the medical evidence permitted the ALJ to reject any testimony from Plaintiff regarding such effects.  See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)(requiring clinical evidence to support claims of impairment from drug side effects);

see also Osenbrock, 240 F.3d at 1164 (finding no substantial evidence of impairment from medicine's side effects where the record contained "passing mentions of the side effects of [claimant's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [claimant's] ability to work"). The Court cannot conclude that the ALJ's failure to make specific findings regarding any side effects of Plaintiff's medication was error.

In sum, the ALJ's reasoning that Plaintiff's reported activities were inconsistent with her claim of disabling limitations (AR 18), that Plaintiff had been "conservatively" treated for her condition, that she did not have a "regular prescription" for narcotic pain medication (AR 19), and that Plaintiff did not seek continuous treatment (Id.), provided clear and convincing grounds to find Plaintiff not credible. As such, Plaintiff is not entitled to relief on this claim.

**D.    The ALJ's RFC Findings Are Supported By Substantial Evidence In The Record**

Plaintiff argues that had the ALJ properly weighed Dr. Hunt's opinion or credited Plaintiff's testimony, he would have found Plaintiff disabled. (Jt. Stip at 18-19). This claim lacks merit.

\\

\\

\\

\\

The ALJ made the following RFC findings:

> [T]he [Plaintiff] was limited by an inability to lift
> more than ten pounds, by an inability to stand or walk
> longer than 2 hours in an 8-hour work day, by an
> inability to sit longer than 6 hours in an 8-hour work
> day, by an inability to do more than occasional stooping,
> kneeling, crouching, or crawling, by an inability to
> climb ladders, ropes, and scaffolds, by an inability to
> do more than occasional climbing of ramps or stairs,
> balance, and by a need to use an assistive device for
> walking long distances.

(AR 16).

The ALJ's RFC findings are supported by substantial evidence
in the record including the opinions of examining physician Dr.
Emont and a State Agency doctor.  As previously discussed, Dr.
Emont conducted a physical examination and a musculoskeletal
assessment of Plaintiff.  She observed that Plaintiff walked into
the examining room without any assistance, although she did have
spasm and mild tenderness in her back.  (AR 207).  An x-ray
revealed moderate discogenic disease at L4-L5.  (AR 211).  The ALJ
ultimately adopted the State Agency doctor's more restrictive RFC
findings.  (AR 15-16).  However, the State Agency doctor's opinion
was consistent with Dr. Emont's determination.  Moreover, the ALJ
only adopted the more restrictive RFC to give "the [Plaintiff] the
benefit of the doubt[.]"  (AR 15).

1    In addition, the ALJ considered Plaintiff's "conservative
2 treatment" and "gaps" in treatment in assessing Plaintiff's
3 functional limitations. (AR 16, 19). Conservative treatment may
4 properly be considered in the credibility analysis because it
5 suggests "a lower level of both pain and functional limitation."
6 Johnson, 60 F.3d at 1433; see also Flaten, 44 F.3d at 1464
7 (holding, where claimant had sought treatment for back pain on only
8 two isolated occasions, that "the ALJ was entitled to draw an
9 inference" from the lack of medical care).

10

11    As previously discussed, the ALJ properly rejected Dr. Hunt's
12 opinion and properly found Plaintiff not fully credible.  As such,
13 the ALJ's RFC findings are supported by substantial evidence in the
14 record including the findings of Dr. Emont and the State Agency
15 doctor and Plaintiff's treatment history.  As such, the ALJ
16 committed no error in his RFC determination.

17

18                          **CONCLUSION**

19

20    Consistent with the foregoing, IT IS ORDERED that Judgment be
21 entered AFFIRMING the decision of the Commissioner and dismissing
22 this action with prejudice.  The Clerk of the Court shall serve
23 copies of this Order and the Judgment on counsel for both parties.

24

25 DATED: June 25, 2007

26

27                    _____/s/_____
                     SUZANNE H. SEGAL
28                   UNITED STATES MAGISTRATE JUDGE

                              32